Welcome Judge Selya is joining us remotely. Judge Selya can you hear us? Yes I can. Okay we can hear you and Judge Selya will be just participating as if you were right here present but at the end Judge Selya just to make sure if there's any questions you want to ask I'll make sure to check with you. Thank you. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is case number 20-1708 United States v. Eric Santiago. Good morning. May it please the court. Jane LaRock for the defendant Eric Santiago. This is an appeal of a conviction after jury trial of a man who was charged with a single count of possession with intent to distribute and distribution. Did you mean to reserve rebuttal time? If not that's fine. Yes please thank you. How much did you want? Two minutes. Thank you. Sorry. Who's charged with a single count of possession with intent to distribute and distribution of fentanyl? The first argument I'd like to address is the failure to instruct the jury that they had to be unanimous on either possession with intent or distribution and I raise it in terms of duplicity of the indictment in the appeal which was not how it was raised in the trial but the trial counsel did ask for a unanimity instruction on it which was denied. What's the significance of that? Go ahead. No you go ahead. Doesn't our suppositive decision make any other harm? I should tell you we're having a little trouble hearing you. Doesn't our suppositive decision make any other harm? I think there would have been merger of the counts if they had been instructed that they had to be unanimous. But that's not what Supurvita says. Supurvita says that on a charge exactly like this one, that the jury verdict where there is only a single transaction, the jury verdict represents a merger of the two counts. Any error in the failure to give a unanimity instruction is therefore harmed. I don't think so. I think the jury still has to be unanimous as to whether what he did, did he possess it with intent or did he distribute it. Go ahead. In Supurvita the defendant, there were two different charges and the jury found him guilty of both counts and in Supurvita the court said well he actually did, he possessed it with intent prior to the distribution unlike in this case where the only evidence was the distribution of it. There were no witnesses to it but the fentanyl was found and supposedly Mr. Santiago is the one that put it there. Let me see if I can, I'll give you two cases. Case one, there's a videotape of money being passed in return for drugs. Okay, I take it you agree that's merged. I agree that's distribution. I guess in every distribution case then there's going to be possession. Well if that's true then I think we have the merger problem. I thought your argument was that unlike that case, this case there is a separation in time and a relatively significant separation between the evidence that concerns what happened that affected the sale and the evidence that would be the basis for finding the possession and in a case like that then it doesn't seem that it's as obvious that there's a merger. I think the way this was tried was there was the single distribution of the drugs that were found in the garage on the day that the CW called the police and said that the drugs are here. There was no evidence that Santiago possessed any drugs. No, no, but there was the text exchange about the sale being negotiated. The sale didn't occur at the moment that the drugs were dropped off, did it? Well, no because nobody was in the... Right, so I thought that was the basis for finding that the evidence of the transaction is distinct from the evidence of the possession. In the classic case of I hand you drugs in return for cash, it's hard to see how there is separation between those two things because the evidence of the distribution is the evidence of the possession. Well, if I'm wrong, I guess I'm not fully understanding what the argument is for how there isn't merger. Well, I think there would be merger if the jury found him guilty of both, they're not counts, but both offenses within the one count and then they would merge. I think it's still up to the jury. The thought is there's no concern about unanimity if the only way the jury could find one crime is to find the other. So you must be saying in this case it was possible for six of the jurors to find one crime and not the other and the other six to find one and not the other. That's why you would need a... Right, and actually that's what the... What's the theory that allows that on this record? I'm sorry, the trial prosecutor himself said I'm afraid that's, that's not what they should do, but I'm afraid that they might do that, that they wouldn't understand this was distribution. So I think he himself is saying that the jury could find two different things based on the facts that they brought. And what, is that a plausible, how is that plausible on this record in your view? Well, because there's no, there was no evidence of anyone dropping off the drugs. Well then how could they find possession? The theory is that they have to be able to find one crime and not the other. If you can't do that, there's not going to be a unanimity problem because either they'll all find no crime or they'll all find both crimes. Well, I think they needed to be instructed on it and they should have. I don't know why the two separate crimes, I mean, there's a heavier burden on them to show distribution. Anything further from? No. Did Celia? No, I can't. Okay. Then the motion for the mistrial that was made and the, what happened was a case agent testified in response to questioning. Counsel, I think, I think we understand what happened. What puzzles me is why was defense counsel asking questions about these other investigations that created the very problem that then becomes the basis for requests for a mistrial? I mean, that, the court itself, the district court basically says, you stumbled into this, that we find ourselves in the situation is really your doing. So what was defense counsel all about in stumbling into this situation? Well, he was told, according to him, he was told that there was no connection between the the other drug investigation and Mr. Santiago. There was some disagreement as to what they told, but Mr. Grimaldi, the defense attorney, who's very experienced, I think he, Judge Celia, or I thought he had a question. I'm sorry. I, I think he was, I don't want to say sandbag might be a little strong, but he was told that it was, there was no connection between this other drug investigation and Mr. Santiago. And I think that's why he asked the question, because he was expecting the answer to be no, as he was told prior to trial. No, there is no connection between the two. And then the case agent testified, yes, there was a connection between the two. And that's why he. Well, oddly, the government in its brief is the only, I did not find this in your brief, suggests what the rationale might have been. Some, some notion that those investigations were himself by testifying in the way that he was. I mean, it all sounded pretty far fetched. Is that, is that your understanding of what, why defense counsel might've been doing what he did? I, I think so. Yes. And that, that he thought the case agent would say that there was no connection between them. Yes. Yes, exactly. And that then it would further bring into question why the cooperating witness was testifying as he was. But in this discretionary context, I mean, the judge reacted immediately with a curative instruction, repeated it when he instructed the jury. I mean, it's really, this is a quintessential discretionary call. It's hard to, hard to see where the court went awry in denying the request for a mistrial. Um, he did give a curative instruction, which the defense attorney didn't feel was sufficient. It wasn't until the following day that he struck the testimony. Um, and I think there was that gap in between. And when the judge said, I want to make this technically correct, I think that signal to the jury, like, yeah, it's just a technicality, you know, kind of don't worry about it so much. So I just think it's hard for any jury to unhear what they've heard. He did give a curative instruction. I will say that. Can I, can I ask you about the, um, the coded language issue, which is, uh, I think an interesting issue. Yes. Yes. So the, the, the cooperating witness testified, uh, as to what he believed Mr. Santiago meant in text conversations they had. Well, excuse me. He also testified as to what he meant. They were both talking in coded language, right? I mean, you're not, you're not suggesting that he could not explain what he meant by the language he was using, right? He, he could explain. Yes. He, he could testify what he meant. I, I mean, I, I know I said it was coded language. It's, it's not clear that it was coded language. It wasn't, you know, typical drug jargon type of code. It was talking about used cars, jet skis, which was the legitimate business of the cooperating witness. He could testify. This is what I meant, but I don't think he could testify what Mr. Santiago meant. I think the prosecutor could argue it, but they were using the, the Commonwealth with, uh, cooperating witness as an interpreter, basically, of the conversation. But aren't, aren't our precedents pretty solidly against you? We seem to have a lot of precedents on this point. I mean, he's, he's a participant in the conversation. Uh, you know, he's a lay witness explaining his understanding of what's going on. How, I mean, are there, what would, what would take this case outside those pretty well established precedents? Well, again, I think he could testify what he meant, but he was, I would say, an unreliable witness. He had a lot of credibility problems. And so then they, relying on someone who has credibility problems to say, this is what we were talking about. We weren't talking about. You can just finish this answer. We weren't talking about what the words actually meant. We were talking about something else. Thank you. Thank you. Um, good morning, may it please the court. Karen Eisenstadt for the government. I'd like to start with, um, the unanimity issue that the court had asked some questions about of counsel. So the only reason claimed here for meeting the specific unanimity instruction was that the count was duplicitous. And it's not duplicitous because under this court's precedence, this is the factual situation where, um, an offensive distribution and possession. Can I just understand, just so I get how this works, is the right way to think about this, that this is a challenge to the indictment or just challenge to the failure to give the instruction? I thought it was a failure to give the instruction. Correct. Correct. It's for the failure to give the instruction, but the basis on which, correct. Okay. Um, and I think, uh, Chief Judge Baring had some questions about whether there's, there are facts from which the jury could have found a separate act of distribution with respect to the text messages. The answer is no. And I think, um, there are a couple reasons. This is how the case was presented to the jury. So the charge in the indictment was, um, an act of distribution and possession with intent to distribute on or about June 16th in New Bedford, which is where, uh, the cooperator lived. So it's the act of bringing the drugs to the cooperator's house that is charged. And this is how the case was presented to the jury throughout the case. So this is why the district court observed, you know, I'm thinking about this case and I can't see any way they could find distribution without also finding the, uh, possession because it was the same act as in the merger cases. So in other words, the act, the distribution wasn't the exchange of cash? No. It has nothing to do with it. No, it was truly just the drop off of the drugs. Correct. And if you look at the record, when they're discussing, um, the issue of how to instruct the jury, the defense agrees that this is what the case is about. This is what we've all presented in our arguing. So why was the prosecutor worried? I think the prosecutor's concern was that the jury may not properly follow the instructions, which, I mean, we, we presume juries should follow the instructions, but the concern was that does count as distribution, dropping something off, meeting with the guy and saying, I left it, you know, on the trunk of your car. Um, but you know, is there some way the jury may be confused and think, well, that doesn't count. How would the unanimity instruction help solve that problem for the prosecutor? It would not. It would not. But the prosecutor thought it was solving a problem. The prosecutor I thought was supporting the unanimity instruction. No, the prosecutor said the government doesn't feel a specific unanimity instruction is necessary. Because properly following the instructions, there's no way not to be unanimous. What's that part of the exchange when the prosecutor says, I'm a little nervous about, I thought that was in connection with supporting the unanimity instruction request. So what happened was, I'm not saying that the, the prosecutor demanded it. No, no. I think actually at that point, what was going on was defense counsel was saying, we think they need to pick one. We'd like to just charge the jury on distribution and just out of the case entirely. And the prosecutor said, well, it really is mainly a distribution case, but I'm concerned, you know, because it, there's no sort of hand to hand transaction. At that point, they're debating whether to have an instruction on only one offense. Correct. As opposed to a unanimity instruction. Correct. So at that point, the court had already said, I'm not giving a unanimity instruction because I see no way they could actually be non-unanimous and convict. Counsel, was this a, excuse me, a conscious charging decision? To include both crimes in one count as opposed to doing them in separate counts? And if so, why, why was it done that way? As I understand, this is a common way to charge it if it is just the one act. So it's, you know, honor about this date and this one transaction, a moment in time to just charge it as one count, because to charge it in two counts would, I think, arguably be multiplicitous than, you know, after the trial, one would need to be struck because based on the case law, you know, Congress didn't intend that to be two convictions and two punishments for what is essentially on these facts, one act. And why isn't it just charged as distribution then? I think the way I understand it is, you know, because Congress put both in the statute and the defendant does both that, you know, it's essentially the indictment sort of just parrots or matches the language in the statute. So, you know, distribution and possess with intent to distribute. And based on the case law, I've seen there's no need for the government to choose where there's two alternate ways of committing a single crime. The prosecution doesn't need, isn't not obligated to just choose one to go to the jury. So just if, I mean, and I don't think you have to, well, just help me think through, because I think I want to just understand what's at stake in this particular case. If that honor about language was not in the indictment, and let's say it was, you know, over some period of time, instead it said. The facts here arguably then would give rise to the need for unanimity destruction instruction if it was possible for the jury to think that the act of distribution occurred through the exchange and the consummation of the sale at that point, right? I think that's correct. Because that would not then meet the factual pattern, which this court has said is very narrow in which the offenses do merge. It would be more like the cases in Tejada Sepulveda where they don't merge because there are just separate facts. But I think based on the facts here, there is, they do merge and then thus there is no specific unanimity instruction, which is, you know, how the court reasoned. And I think that understanding of what was charged and what the case was about was... That's helpful. On the last point, I guess the defense counsel in the brief makes a reference to the possibility that there was a third party who dropped off the fentanyl in that place. But I guess you would say if that were true, though, then there would be no distribution. Right. There's no evidence of any third party, right? So, yes. But if there were that evidence, then yes, then you'd have distribution, but not possession or, you know, then they would be, because, you know, Santiago would still be involved in the text, but perhaps he was not the one who distributed. So there would be a split, I think, in the facts. Well, that's what I'm saying. Is that possible even on this record? No. No, it's not possible on this record. Why not? Is that because there's no testimony about a third party? In other words, what I'm saying is that what they say, what the appellant says in the brief, and I don't fully grasp it, but there's a suggestion in the brief that the jury could believe a third party dropped off the fentanyl in the location where the distribution supposedly occurred. If that's true, if a jury could believe that, is there still some way on this record that the jury could find the defendant guilty of either possession or distribution based on the text messages or something like that? In other words, the idea would be he played a role in getting it there, but wasn't himself the one who carried it there? I think that's what the suggestion in the appellant's brief is. I don't see how that would be possible. Obviously, there was no evidence like that in the case, first of all, so it's not something I've thought about extensively. But I take it that is the appellant's position, that the unusual fact pattern here is we just have a cooperator or informant testifying about what happened, and then the scenario is drugs are in a place, and the thought is, well, how'd they get there? I don't know. Jury says, I'm sure that this guy was involved in getting them there, but I don't believe he carried them there. Right. So I mean, that could still, depending on the specific facts, be constructive possession, joint possession. So that was part of the reasoning, that there are ways to possess other than physically possessing. But is there a way to have the distribution occur through a third party in which you wouldn't have possession, but you'd still have distribution? In other words, if I direct somebody to bring it there, does that mean I've constructively possessed it necessarily? No, I don't think that's necessarily the same thing. So I think that's the separation that I take it appellant's making, and I guess the question is, in evaluating the need for unanimity instruction, how plausible does it have to be that the evidence could support the scenario in which there'd be separation? I think there'd need to be some fair plausibility, and here there's truly none. And if you look again at the record, the defense counsel saw it exactly the same way. So this is how it was presented in the district court. So if you look at joint appendix 124 to 25, defense counsel says, you know, those are the facts that the informant shows up at his home, Mr. Santiago's there, he's like, the drugs are there, they have a conversation. The text messages do confirm that Mr. Santiago was at the cooperator's home that day. So there's no question about that. And then thereafter, there's payment. Those are the facts. I don't see how the jury could find that one occurred, but the other didn't. And so the only factual act being alleged as the basis for both offenses is truly that dropping off of the drugs. On the mistrial issue, the district court did not abuse its discretion, concluding that the harm was adequately repaired by the court's curative actions. The remark was isolated, it's brief, the government's case was strong, and the district court's reasoning was, there's a curative instruction. They've heard from me point blank that there's no evidence. You, defense counsel, will be free to make the same argument that there is no evidence, that there's no connection. While that's short of perfection, does that really require a mistrial? And the government's position is, the court was well within its discretion in reasoning that a mistrial in this circumstance was unnecessary. Regarding the cooperator's testimony about the text messages, the Quaisaw in this court, as Judge Lopez pointed out, there are numerous cases from this court that say, if there's a conversation that is ambiguous or coded, a participant in that conversation may interpret it as lay opinion testimony. This is not a situation like an agent giving testimony regarding commonly used terms of drug jargon based on expertise. It's personal knowledge, testimony about, this is what we were talking about in this extensive conversation. And here, there was a rational basis given in the evidence for the cooperator's interpretation that Mr. Santiago understood the code. I mean, it was a long conversation. He's responding in kind about the motorbike. And there's two controlled payments made for something which were accepted. So there's, this fits clearly within the case law from this court that this is appropriate lay opinion testimony. The defendants also raised a couple other issues in the briefing of the court. I'm happy to answer any questions from the court about those. If not, the government will rest on its feet. Counsel, very quickly, the weight of the fentanyl is quite consequential in a case like this, right? I mean, it can have a dramatic effect on sentencing. And I think defense counsel makes the point that they were deprived of the opportunity to, I think they're saying to cross-examine the person who actually carried out the initial weight determination. It was sort of recreated by the person who actually testified. And they feel they should have had a chance to cross-examine the individual who actually performed the weight, which was then disclosed through discovery. How do you respond to that concern? So the defense did have an opportunity to cross-examine the agent who actually did the weighing and testified about it. In terms of the initial weighing done by the chemist who had since retired, that didn't enter into evidence, so there was no prejudice there. That was disclosed, but as the person wasn't available to testify, it was a confrontation clause issue. There was an objection and it didn't come in. In terms of the agent, they did have an opportunity to cross-examine. There was a claim that this was a late disclosure. It was disclosed as soon as it existed, but admittedly during the trial. But there was no request for continuance. We need a little bit of time to absorb this information. So the opportunity to cross-examine was there, and there's even now on appeal sort of explanation as to if we had more time, we could have crossed the agent in these ways, in a way that would have made a difference. So from the government's point of view, there's simply no prejudice here, even if there is a late disclosure issue. Gene LaRock for the defendant, Eric Santiago. I just want to briefly address the drug weight issue. The Defense cross-examined the police officer who weighed the drugs the night before, but he did not have the chance to cross-examine the chemist on the issue. For example, there was a difference. The drug cert originally said the net weight was 499 grams. The police officer testified it was 480 grams. Now, the police officer would have no knowledge about what happened to that 19 grams. It's speculation what the trial attorney would have done, but if the chemist who was on the stand said the net weight was 480 grams, then I think he would have an opportunity. Why does that difference matter? Those two numbers, they don't have any consequence, do they? Because it doesn't bring it below 400. Well, I think it would take into consideration just in general what happened at the lab. Is it normal to lose 19 grams of weight between originally weighing it and now? I think it would call into question just the entire... Counsel, when the original chemist who testified it, when the government announced that chemist would be a carrier of the mutant before, it's a motion to continue? Judge Selya, we're having a little bit of trouble hearing you, Judge Selya. What I'd like to know is when the original chemist, when it was announced that the original chemist had retired and would not testify, was there a request for a continuance so that you could subpoena the chemist and bring the chemist in? I don't believe so, no. Well, then haven't you waived the non-appearance of the chemist? I'm sorry? Haven't you waived the non-appearance of the chemist? Oh. I'm not sure he questioned that the original chemist wasn't there. I think it wasn't clear until the chemist who testified. So your real argument is that this shows the prejudice from the late disclosure? Right. Is that by then it was too late to figure out what to do? Yeah, yeah. Okay. Thank you. Thank you. That concludes our argument in this case.